782 So.2d 1040 (2001)
STATE of Louisiana
v.
Kathleen WEIDENBACKER.
No. 00-KA-931.
Court of Appeal of Louisiana, Fifth Circuit.
January 23, 2001.
*1041 Paul D. Connick, Jr., District Attorney, Robert Odinet, Assistant District Attorney, Gretna, LA, Counsel for the State.
Bart Stapert, St. Thomas Community Law Center, New Orleans, LA, Counsel for appellant.
Court composed of Judges GRISBAUM, DUFRESNE, and McMANUS.
McMANUS, Judge.
In this criminal appeal, Defendant Kathleen Weidenbacker appeals her conviction for theft. We affirm Defendant's conviction and sentence, and remand the matter for correction of one patent error.

STATEMENT OF THE CASE
On September 21, 1999, the Jefferson Parish District Attorney filed a bill of information charging Defendant, Kathleen Weidenbacker, with committing theft of goods valued at between $100.00 and $500.00 from Wal-Mart, in violation of LSA-R.S. 14:67.10. Defendant was arraigned on October 28, 1999, at which time she pled not guilty.
Defendant waived her right to a jury trial. On January 5, 2000, the matter proceeded to a bench trial before Judge *1042 McCabe who returned a verdict of guilty as charged. Following trial, Defendant waived all delays for sentencing. The trial court then sentenced Defendant to one year at hard labor, suspended the execution of the sentence, and placed Defendant on one year active probation pursuant to Louisiana Code of Criminal Procedure articles 893 and 894.1. Defendant filed a timely appeal.

FACTS
This case involves a theft on September 13, 1999, at the Wal-Mart store located at 1000 West Esplanade Avenue in Kenner, Louisiana. Sandra Harris, Wal-Mart's department manager of health and beauty aids, testified that she was on her way back from lunch at about 12:30 p.m. when she first saw Defendant looking and walking around in the domestic department. Ms. Harris asked Defendant whether she could help her, and Defendant told Ms. Harris she had lost her ring. Defendant did not have a basket next to her at the time. Ms. Harris spent the next thirty minutes searching for the ring on four different aisles, lifting towels and rugs, and looking on the floor. Ms. Harris testified that she could not find the ring, so she went back to her department.
Ms. Harris testified that toward the end of the day, about 4:30 p.m., she went to the housewares department. As she was doing so, she heard someone "rambling" through bags in the toy department.[1] When Ms. Harris looked down the aisle, she noticed Defendant again. Ms. Harris continued to watch Defendant and observed her stuffing merchandise into a bag. According to Ms. Harris's testimony, Defendant was pulling bags off of the counter and putting merchandise from the shopping cart into the bags. Ms. Harris saw Defendant tie up the bags. She observed Defendant doing this for about ten minutes. She also observed a six-foot tree in a bag in Defendant's basket.
Another Wal-Mart employee then passed by. Ms. Harris asked the employee to watch Defendant while she called security. Ms. Harris testified that Defendant then went through the garden center and exited the garden center doors. Ms. Harris testified positively that Defendant had completely exited the store and was on the sidewalk between the store and the parking lot when she was stopped. Ms. Harris followed Defendant, and after Defendant exited the store completely, Ms. Harris asked Defendant to come back into the store. Every item in Defendant's two baskets was in a bag. Defendant was not able to produce a receipt. Defendant offered to pay for the merchandise, but Ms. Harris stated, "that's not the way it works." Ms. Harris then let security and the store managers handle it from there. Ms. Harris testified that Defendant was in the store for four hours.
Wesseline Marcia, an employee of Wal-Mart, testified that she first saw Defendant standing on the toy aisle. At that time, Defendant had a buggy full of merchandise and empty bags. Ms. Marcia testified that she observed Defendant stuffing the empty bags with merchandise and eating a candy bar. Defendant was transferring the merchandise from the shopping cart to the bags. Ms. Marcia testified that someone else was watching Defendant at the same time. She asked the other person to stay there until she went to get security. Ms. Marcia saw Ms. Harris also watching Defendant.
*1043 Defendant testified that when she first went to Wal-Mart on the day of the incident, she brought merchandise with her to return. She claimed that she had purchased the merchandise previously at another Wal-Mart. She put the items on the counter and left the bags at the bottom of the basket. She then proceeded to shop. Defendant testified that while she was shopping, she lost her ring. She stated that Ms. Harris told her to go through everything in her basket to see whether the ring had fallen from the top to the bottom of the basket. Defendant testified that she had two baskets sitting in the middle of the aisle, and she was transferring merchandise from one basket to the other in her search for the ring. Defendant put the merchandise in the bags to be sure that the ring would not be lost.
Defendant then testified that she went to the garden section to look for a real Ficus tree, even though she already had an artificial Ficus tree in her basket. Defendant went through the garden center and out of the doors with the two baskets. When defendant turned around, Ms. Harris was right next to her. Defendant testified that she walked out of the doors because she thought they led to the garden center, but realized she was mistaken when Ms. Harris appeared next to her. Defendant testified that she became confused because the layout of the Kenner Wal-Mart was different from the layout of the Wal-Mart where she usually shops. However, Ms. Harris testified that all of the local Wal-Marts are generally laid out the same. Defendant offered to pay for the items. She explained to Ms. Harris what she was doing outside of the store, but Ms. Harris told her to follow the man in front of her. The manager would not allow her to say or do anything, or to pay for the merchandise. Defendant testified that she had no intent to steal the merchandise when she left Wal-Mart.

ASSIGNMENT OF ERROR NUMBER ONE
As Defendant's only assignment of error, she asserts that there was insufficient evidence to convict her of theft of between $100.00 and $500.00. Defendant asserts that the State failed to prove the element of intent and therefore, there was insufficient evidence to convict Defendant of theft pursuant to LSA-R.S. 14:67.10. The State maintains that the evidence presented at trial was sufficient to warrant a conviction.
The standard for reviewing the sufficiency of evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 318-320, 99 S.Ct. 2781, 2788-2790, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court explained that when assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See also State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, 690.
Defendant was charged with and convicted of theft of goods valued at between $100.00 and $500.00, a violation of LSA-R.S. 14:67.10, which provides in pertinent part:
67.10. Theft of goods
A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation *1044 or taking is essential and may be inferred when a person:
(1) Intentionally conceals, on his person or otherwise, goods held for sale
. . .
(3) Transfers goods from one container or package to another or places goods in any container, package, or wrapping in a manner to avoid detection ...
Specific intent is a state of mind and need not be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La. 1984); State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/24/00); 753 So.2d 208. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930 cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
At trial, the State and the defense presented two different versions of the facts. The State presented the testimony of Ms. Harris, Ms. Marcia and Officer Danny Naquin. Ms. Marcia testified that she observed Defendant on the toy aisle, stuffing bags with merchandise. Ms. Harris testified that Defendant was pulling bags off of the counter, filling those bags with merchandise, tying them up, and placing the bags in the shopping cart. Ms. Harris testified that Defendant exited the garden center doors with merchandise for which she had not paid. She testified that all of the local Wal-Marts are generally laid out the same.
In her defense, Ms. Weidenbacker testified that she shifted and bagged merchandise so that she would not lose her ring. She testified that she was looking for the garden center for a real Ficus tree, but became confused because the layout of the Kenner Wal-Mart was different from the layout of the Wal-Mart where she usually shops. Defendant testified she had no intent to steal the merchandise when she left Wal-Mart.
After hearing the testimony and evaluating the credibility of the witnesses, the trial judge found Defendant guilty of theft of goods between $100.00 and $500.00. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052.
In the case of State v. Johnson, 95-906 (La.App. 5 Cir. 1/28/97), 688 So.2d 162, this Court found the fact that defendant concealed a department store's shirts in a bag lined with aluminum foil sufficient to prove intent to take the items, and thus supported the defendant's conviction for theft of goods. Similarly, in State v. Ballay, 99-906 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, witnesses testified that the defendant attempted to exit the store with merchandise for which he had not paid. This court found that it was possible to infer the requisite intent from the testimony that the merchandise was concealed in the Maison Blanche bag in the defendant's possession. Likewise, in State v. Herrera, 98-677 (La.App. 5 Cir. 2/10/99), 729 So.2d 75, witnesses testified at trial that the defendant *1045 attempted to exit the store with merchandise for which she had not paid. This Court found that it was possible to infer the requisite intent from the testimony that the merchandise was concealed in a handbag in the defendant's possession.
The above authority establishes without question that it is possible to infer the requisite intent for the crime of theft when a defendant places items in a bag lined with aluminum foil, a shopping bag, or a handbag, and exiting the store with those items without paying for them. Here, based on the evidence produced, the inference was unmistakable that Defendant intended to leave the Wal-Mart without paying for the items in her shopping cart; the evidence was sufficient under the Jackson standard to support the Defendant's conviction.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals that there is one error patent in this case.
While the transcript of the Defendant's sentencing reflects that the trial judge advised the Defendant of the postconviction relief prescriptive period as required by LSA-C.Cr.P. art. 930.8, the commitment does not so reflect. When there is a discrepancy between the transcript and the minute entry, the transcript will prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983). We therefore remand the matter, and instruct the trial court to amend the commitment to reflect that the Defendant was properly informed of the applicable prescriptive period.
The record also reflects that the Defendant filed a motion to suppress evidence, but it does not reflect that the trial judge ruled on the motion. However, the Defendant does not raise this issue in the appellate brief. A defendant waives all pending motions by permitting trial to proceed without raising the issue that his pretrial motions were neither heard nor ruled upon. State v. Alexander, 97-1199 (La.App. 5 Cir. 9/29/98), 720 So.2d 82, 86; State v. Price, 96-680 (La.App. 5 Cir. 2/25/97), 690 So.2d 191, 196. This error, therefore, requires no corrective action on our part.
Therefore, for the above reasons, we affirm Defendant's conviction and sentence, and remand the matter solely for the trial judge to correct the commitment to show that Defendant was properly informed of the delays in which to file an application for post conviction relief.
AFFIRMED; REMANDED FOR AMENDMENT OF COMMITMENT.
NOTES
[1] In their testimony, the witnesses never specifically referred to Wal-Mart bags being used. However, State's Exhibit Number 3, which was admitted into evidence during the testimony of Officer Naquin, shows photographs of blue Wal-Mart bags in the basket.