934 So.2d 269 (2006)
STATE of Louisiana
v.
Damon SMITH.
No. 05-KA-951.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 2006.
*272 John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant District Attorney, LaPlace, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Appellate Counsel, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
The defendant, Damon Smith, has appealed his convictions of distribution of cocaine and distribution of marijuana. For the reasons that follow, we affirm the convictions.

FACTS:
Detective Kevin Kately of the Iberia Parish Sheriff's Office testified that on June 26, 2002, he assisted the St. John the Baptist Parish Sheriff's Office in an undercover drug operation. He was assigned to go to Thirteenth Street in Reserve to attempt drug purchases.
Detective Kately testified that while driving down Thirteenth Street, he encountered a black male, who he later learned was defendant, Damon Smith. The officer explained that he stopped to ask defendant where he could obtain narcotics. Detective Kately testified that he allowed defendant to get into his vehicle so that defendant could direct him to a location where there were drugs. Detective Kately testified that he continued to drive along Thirteenth Street, and defendant told him to stop as they approached a man, later identified as Michael Lee. According to Detective Kately, defendant spoke to Lee as if he knew him.
Detective Kately testified that they asked Lee for narcotics. Lee gave Detective Kately crack cocaine in exchange for thirty dollars. Detective Kately also paid Lee ten dollars for some marijuana. Detective Kately testified that defendant asked Lee to give him marijuana, and Lee complied and that defendant did not pay Lee for his marijuana.
Detective Kately explained that upon completing the buy, he placed the suspected crack cocaine into an evidence envelope (State's Exhibit 1) and sealed it. He wrote his initials on the envelope and marked it as buy number two, as it was part of the second transaction he took part in that day. Detective Kately packaged the suspected marijuana (State's Exhibit 2) in the same manner. The marijuana Lee gave to defendant was not seized.
Detective Samantha Wilson of the St. John the Baptist Parish Sheriff's Office testified that she supervised the undercover operation on June 26, 2002. As part of the "cover team," she monitored the drug transactions from a remote location. Detective Wilson testified that she met Detective Kately after the purchase in a prearranged location and he gave her the substances he had purchased. Detective Wilson testified that she field tested the evidence, and it was positive for cocaine and marijuana. She then packaged the envelopes in an evidence bag. The evidence was later transported to the Louisiana State Police Crime Lab where further testing confirmed the results of the field tests.
Detective Troy Hidalgo, a narcotics officer with the St. John the Baptist Parish *273 Sheriff's Office, testified that he installed hidden audio and video devices in the car used by Detective Kately during the undercover operation. The June 26, 2002 transaction was recorded, and the tape was introduced at trial and shown to the jury.
Michael Lee testified for the defense at trial. He stated that he pled guilty to narcotics distribution in connection with the June 26, 2002 incident. Lee admitted knowing the defendant, explaining that defendant had been his barber since childhood. Lee stated that when he sold cocaine and marijuana to the undercover agent on June 26, 2002, he saw defendant in the agent's vehicle. Lee testified that he did not agree to give defendant anything in exchange for bringing him people who wanted to buy drugs. He testified that after he completed his transaction with the officer, he offered defendant some marijuana. Lee explained that defendant took the marijuana, and paid him for it later that day.
At the conclusion of trial, the jury returned verdicts of guilty as charged on both counts. The State filed a habitual offender Bill of Information alleging defendant to be a second felony offender that was later dismissed by the State. The defendant was sentenced to twenty-five years imprisonment on each count to be served concurrently. This appeal followed.[1]

ASSIGNMENT OF ERROR NUMBER FOUR
In his last Assignment of Error, defendant argues the verdict was contrary to the law and evidence presented at trial and contends that the State failed to provide sufficient evidence at trial to support his convictions for distribution of marijuana and cocaine. Specifically he argues that the State did not prove he was a principal to the sale of drugs to Detective Kately.
When, as in this case, issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the appellate court must first determine the sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. Hearold, 603 So.2d 731, 734 (La.1992). For the foregoing reasons, defendant's fourth Assignment of Error will be discussed first.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291 (per curiam). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). Ultimately, all *274 evidence, both direct and circumstantial, must be sufficient under the Jackson standard to prove guilt beyond a reasonable doubt. Id., citing State v. Rosiere, 488 So.2d 965, 968 (La.1986).
LSA-R.S. 40:967 A(1) provides that it is unlawful for any person to knowingly and intentionally distribute controlled dangerous substances classified in Schedule II. Cocaine is classified as a controlled dangerous substance under Schedule II. LSA-R.S. 40:964. LSA-R.S. 40:966 A(1) prohibits the knowing and intentional distribution of controlled dangerous substances in Schedule I. Marijuana is classified as a Schedule I controlled dangerous substance by LSA-R.S. 40:964.
The term "distribute," as it is used in the Uniform Controlled Dangerous Substances Law, means "to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to a lawful order of a practitioner." LSA-R.S. 40:961(14). The term "deliver" means "the transfer of a controlled dangerous substance whether or not there exists an agency relationship." LSA-R.S. 40:961(10).
A defendant may be found guilty of distribution as a principal to the offense if he "`aids and abets in the distribution or if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance.'" State v. Pierre, 03-1306 (La.App. 5 Cir. 2/23/04), 869 So.2d 206, 211, writ denied, 04-0959 (La.10/1/04), 883 So.2d 1006, (quoting State v. Bartley, 00-1370, p. 5 (La.App. 5 Cir. 2/14/01), 782 So.2d 29, 32-33, writ denied, 01-0717 (La.2/22/02), 809 So.2d 981). See also, LSA-R.S. 14:24. An individual may only be convicted as a principal to a crime for which he personally has the requisite mental state. State v. Carey, 04-1073 (La.App. 5 Cir. 3/29/05), 901 So.2d 509. Thus, mere presence at the scene of a crime does not make one a principal to the crime. Id.
Distribution of a controlled dangerous substance is a general intent crime. State v. Pierre, supra. See also, State v. Banks, 307 So.2d 594, 596-597 (La.1975). "General criminal intent is present whenever there is specific intent, and also "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." LSA-R.S. 14:10(2).
At trial in the instant case, the evidence showed that it was Michael Lee, not defendant, who actually gave the narcotics to Detective Kately, and who received the money from the officer. The State sought to prove that defendant was a principal to the narcotics distribution in that he directed the officer to Lee and accepted payment from Lee in the form of marijuana. Defendant argues that the State's assertion was refuted by Lee's own testimony.
Kately testified that he stopped and asked defendant where he could get some narcotics. Kately explained that upon defendant's suggestion, he allowed defendant to ride along with him so that defendant could direct him to the area where the narcotics were located. Kately testified that he drove under defendant's direction until they came upon Lee and defendant told him to stop the vehicle.
Kately testified that defendant seemed to know Lee and called him by a nickname. When Kately completed his transaction with Lee, defendant asked Lee for some marijuana. According to Kately, defendant told Lee, "Come on, Moody. I took care of you." Kately said that Lee gave defendant some marijuana, and that defendant did not give Lee any money in return.
*275 Michael Lee testified that he saw defendant in the car with Kately when he sold the officer marijuana and cocaine. Lee denied having an arrangement with defendant to give him anything in exchange for bringing him people who wanted to buy drugs. Lee testified that after he sold narcotics to the undercover officer, defendant accepted his offer of marijuana and defendant paid him for the marijuana later that day.
The videotape was played three times for the jury in the course of the trial. The jury could reasonably have inferred from the videotape and from Kately's testimony that defendant had arranged with Lee to assist him in selling narcotics by taking potential buyers to him. While Lee's testimony, if believed, presents a possible hypothesis of innocence, the jury obviously found Kately's testimony and the videotape to be more credible. This Court cannot assess a witness' credibility or reweigh evidence on appeal. State v. Benoit, 04-436, p. 10 (La.App. 5 Cir. 9/28/04), 885 So.2d 625, 631.
Accordingly we find that the evidence presented at trial was sufficient under the Jackson criteria to support defendant's conviction.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment, defendant contends that the trial court erred in denying his challenges for cause as to three prospective jurors: Paul Moton, David Loupe, and Rosie Foret. He argues that he was prejudiced in that he was forced to use peremptory challenges to excuse those individuals.
According to LSA-C.Cr.P. art. 797, a defendant may challenge a juror for cause if:
....
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court[.]
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. But when a prospective juror has voiced an opinion seemingly prejudicial to the defendant, and after further inquiry (frequently called "rehabilitation"), the juror demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted. State v. Anthony, 98-0406, p. 24 (La.4/11/00), 776 So.2d 376, 392, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000); State v. Strickland, 04-843, p. 8 (La.App. 5 Cir. 3/1/05), 900 So.2d 885, 895. The trial court is vested with broad discretion in ruling on a challenge for cause, and its ruling will only be reversed when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Strickland, supra.
An erroneous ruling depriving the accused of a peremptory challenge is a *276 substantial violation of his rights and constitutes reversible error. State v. Anthony, 98-0406 at p. 22, 776 So.2d at 391; State v. Stein, 04-23, p. 15 (La.App. 5 Cir. 4/27/04), 874 So.2d 279, 289, writ denied, 04-1345 (La.11/8/04), 885 So.2d 1122. Prejudice is presumed when a trial court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. State v. Jones, 03-3542, p. 10 (La.10/19/04), 884 So.2d 582, 588. Therefore, to prove there has been an error warranting the reversal of a conviction and sentence, a defendant must show: (1) the trial court's erroneous denial of a challenge for cause; and (2) the use of all of his peremptory challenges. No additional showing of prejudice is required. Id.
Defendant asserts that he exhausted all of his peremptory challenges below. But a careful reading of the record shows that defendant is mistaken. In fact, defendant used only six of the twelve peremptory strikes allowed him.[2] While he did use two of his peremptory challenges to excuse Mr. Moton and Mr. Loupe after the judge denied his challenges for cause, he had six peremptory challenges remaining when the selection of the twelve-member jury was completed.
Since defendant failed to exhaust his peremptory challenges, this Court need not reach the issue of whether the trial judge erred in denying the challenges for cause as to prospective jurors, Moton and Loupe. See, State v. Jones, 03-3542 at pp. 14-15, 884 So.2d at 591.
In accordance with LSA-C.Cr.P. art. 789 A, the trial judge gave each party one peremptory challenge in the selection of the two alternate jurors. Defendant used his to excuse prospective juror Rosie Foret. Since Foret was ultimately stricken, and the alternate jurors chosen were dismissed at the start of deliberations, the trial court's ruling as to Foret had no effect on the verdict. Absent a showing of actual prejudice, defendant's claim fails. See, State v. Comeaux, 93-2729, p. 43 (La.7/1/97), 699 So.2d 16, 29, cert. denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998).

ASSIGNMENT OF ERROR NUMBER TWO
In this Assignment of Error, defendant contends that the trial court erred in denying his pre-trial Motion in Limine, in which he asked the court to suppress any State evidence having to do with his alleged co-perpetrator, Michael Lee. Defendant argues that, despite a discovery request, the State failed to inform him prior to trial that Lee was an alleged co-perpetrator. Defendant claims he was prejudiced by the State's failure to comply with discovery rules, and he moves this Court to reverse his conviction and remand for a new trial.
On November 6, 2002, defendant filed a Motion for Discovery and Bill of Particulars in the trial court. He filed a second Motion for Discovery and Bill of Particulars, nearly identical to the first, on November 20, 2002. Under item 24 of both motions, defendant requested, in part: "b) The names of any co-defendants, co-perpetrators, principals, and/or accessories after..." Also, under item 24, defendant asked *277 that the State respond to the following questions:
n) Is the defendant alleged to be the sole perpetrator of the offense charged and all lesser included offenses?
o) Is the defendant alleged to be a "principal" of the offense charged and all lesser included offenses?
p) If the State alleges that the defendant was a principal, please provide the following particulars:
[W]as the defendant present during the commission of the crime?
[D]id the defendant aid and abet in the commission of the crime?
[I]f so, by what particular acts or statements?
[D]id the defendant counsel or procure another to commit the crime?
[I]f so, by what particular acts or statements?
On November 20, 2002, the State filed a written response to defendant's discovery motions. The State responded "None" to request 24-b. The State answered question 24-n, "No, See Attached." As to part o, the State's response was "Yes, See Attached." The State responded to item p with only, "See Attached." Attached to the State's discovery response were the police reports pertaining to defendant's and Lee's arrests for distribution of cocaine and marijuana.
On the second day of trial, defendant made a Motion in Limine asking that the court order the State to refrain from introducing any evidence regarding a co-perpetrator. Defense counsel pointed out that in item 24-b, he asked the State whether there were any co-perpetrators or principals, and the State responded that there were none. Counsel argued that, since the State said there were no co-perpetrators, it should not be allowed to present evidence that defendant aided or abetted, or procured someone else to distribute narcotics.
The prosecutor responded that the State was not required to prove that anyone else was involved in the commission of the charged offenses; only that defendant was. The prosecutor further argued that defendant himself had subpoenaed the other individuals involved in the transaction.
The trial judge denied defendant's motion, stating:
I think it's a curious argument, but I'm not going to go with it this morning. I'm going to leave it that the crime of principal is a singular crime and can be proven with or without additional evidence regardless of theI don't think the answer of 24-B is inherently inconsistent with the crime that Mr. Smith is charged with.
The purpose of Louisiana's criminal discovery rules is to eliminate unwarranted prejudice from surprise testimony and evidence, and to allow the defendant to properly assess the strength of the State's case in order to prepare his defense. LSAC.Cr.P. arts. 716-729; State v. Allen, 94-2262, p. 4 (La.1/13/95), 663 So.2d 686, 688; State v. Donnaud, 04-624, pp. 7-8 (La. App. 5 Cir. 2/15/05), 896 So.2d 1151, 1156. Failure to comply with discovery rules is governed by LSA-C.Cr.P. art. 729.5, which provides, in pertinent part:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter *278 such other order, other than dismissal, as may be appropriate.
Sanctions for failure to comply with discovery procedure are within the sole discretion of the trial judge, and reversal is warranted only when there is an abuse of discretion and prejudice is shown. State v. Bartley, 03-1382, pp. 10-11 (La. App. 5 Cir. 3/30/04), 871 So.2d 563, 570, writ denied, 04-1055 (La.10/1/04), 883 So.2d 1006. In this case, the trial judge did not abuse his discretion in denying defendant's Motion in Limine. It is evident from the attachments to the State's discovery response, particularly the police report, that Michael Lee was the alleged co-perpetrator. The narrative portion of defendant's report states, in part, "On June 26, 2002 at approximately 4:35:00 PM, Kevin Kately purchased 3.48 grams of MARIJUANA for the sum of thirty dollars in U.S. Currency from Michael Lee and Damon Smith."
Defendant does not show that he was prejudiced by the trial court's ruling. His attorney was able to competently cross-examine the State's witnesses at trial about Lee's involvement in the narcotics transaction. Moreover, he called Michael Lee as a witness for the defense and questioned him effectively. Thus we find no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER THREE
In this Assignment of Error, defendant contends that he was deprived of a fair trial by the judge's improper instruction to the jurors during their deliberations. He moves this Court to reverse his convictions and sentences and remand for a new trial.
The district court must charge the jury as to the law applicable to the case. LSA-C.Cr.P. art. 802(1). Article 808 of the Louisiana Code of Criminal Procedure provides, in part:
If the jury or any member thereof, after having retired to deliberate upon the verdict, desires further charges, the officer in charge shall bring the jury into the courtroom, and the court shall in the presence of the defendant, his counsel, and the district attorney, further charge the jury. The further charge may be verbal, but shall be in writing if requested by any juror.
More than two hours into their deliberations, the jury notified the judge in writing that they had been unable to arrive at a verdict. The judge convened court and asked the jurors to resume their deliberations and to attempt to reach a verdict.
After deliberating for twenty more minutes, the jury asked the judge in writing to explain to them the definitions of "principal," "aid and abet," and "procure." The judge again convened court. The record shows that the prosecutor and defense counsel were both present.
The trial court further instructed the jury:
Principal as found in Louisiana Revised Statute. All persons concerned in the commission of a crime are principals and are guilty of the crime charged, if whether present or absent, they directly commit the act constituting the crime, aid and abet in it's (sic) commission or directly or indirectly counsel or procure another to commit the crime.
And, obviously, that definition has a few words you've asked me to further define. I'm reading from Black's Law Dictionary. The Sixth abridged edition. Aid and abet: to help, assist or facilitate the commission of a crime, promote the accomplishment thereof, help in advancing or bringing it about, or encourage, counsel, or incite as to its commission. This comprehends all assistance rendered by words, acts, encouragement, support or presence, actual or constructed *279 to render assistance if necessary. That was aid and abet. The more arcane word is "procure:" to initiate a proceeding, to cause a thing to be done, to instigate, to contrive, to bring about effect or cause, to persuade, induce, prevail upon, or cause a person to do something. To obtain for another. Procure connotes action and means to cause, acquire, get, obtain, bring about, or cause to be done, to find or introduce; said of a broker who obtains a customer to bring the seller and the buyer together so that the seller has an opportunity to sell. Those are the definitions found in the dictionary we commonly use here called Black's. I hope that is helpful....
The attorneys did not object to the additional instructions, nor did they suggest that the judge added anything to them. The jury then spent less than ten additional minutes deliberating before they rendered the verdicts.
Defendant first contends he was prejudiced by the judge's definitions of "aid and abet" and "procure," because he was not given an opportunity to either approve or object to them before they were given. Defendant also complains that the definitions given by the judge were improper because they served to relieve the State of its burden of proof.
As defendant notes, he did not make a timely objection to the judge's additional instructions to the jury. Ordinarily, a defendant may not complain of erroneous jury charges on appeal absent a contemporaneous objection. LSA-C.Cr.P. arts. 801, 841; State v. Little, 00-174, p. 6 (La.App. 5 Cir. 7/25/00), 768 So.2d 182, 185. An exception has been applied in cases where the error involves the very definition of the crime and "the record bears full and sufficient proof of the error which no posterior hearing could augment." State v. Williamson, 389 So.2d 1328, 1331 (La.1980). Since the terms "procure" and "aid and abet" are part of the definition of principals (LSA-R.S. 14:24), and defendant was alleged to have been a principal to narcotics distribution, the trial judge's additional instructions did involve the definition of the charged offense. Thus, defendant is entitled to appellate review on this issue.
While defendant contends he was prejudiced by the judge's definitions of "aid and abet" and "procure," because he was not given an opportunity to either approve or object to them before they were given respect to defendant's first argument, he does not show how he was prejudiced by this alleged failure. He does not suggest alternative definitions nor does he submit additional comments that should have been included with the definitions.
In support of his argument that the definitions served to relieve the State of its burden of proof, defendant claims that the judge's inclusion of the word "presence" in the definition of "aid and abet" was suggestive, since it led the jury to believe his mere presence in the undercover officer's vehicle constituted guilt. He further contends that the judge failed to read to the jury Black's second or alternate definition of the term "procure," focusing instead on the portion of the definition that would suggest his guilt.
It is well settled that any jury instruction that relieves the State of its Fourteenth Amendment burden of proving every element of a criminal offense beyond a reasonable doubt is unconstitutional. Sandstrom v. Montana, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). But, there is no merit to defendant's argument that the judge's additional instructions in this case altered the State's burden of proof. The judge did not suggest to *280 the jury that the State did not have to prove every element of the offenses beyond a reasonable doubt. He simply clarified some of the terms in the statute that defines principals. The judge did not err in reading the jury the definition of "aid and abet" as written in Black's Law Dictionary. The definitions in that publication are based upon accepted jurisprudence, and applicable case law is cited in the dictionary's individual entries. Taken in the context of the jury charge as a whole, we find that the use of the word "presence" was not suggestive and did not relieve the State from proving any element of the crime.
Further, there is no merit to defendant's complaint that the court should have instructed the jury as to Black's alternate definition for "procure" which refers to the brokering of acts of prostitution. The judge is required by Article 802 to charge the jury only as to the law applicable to the case, and that portion of the definition was not pertinent to the facts of the instant case.

CONCLUSION:
For the foregoing reasons, defendant's convictions are affirmed.
CONVICTIONS AFFIRMED.
NOTES
[1] After the jury returned its verdicts, the trial judge asked defense counsel "You'll reserve your rights and appeal later?", and defense counsel answered affirmatively. We find this to be a timely motion for oral appeal. State v. Guillard, 04-899 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, writ denied, 05-1381 (La.1/13/06), 920 So.2d 233.
[2] LSA-C.Cr.P. art. 799 provides, in pertinent part, "In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant." The offenses with which defendant was charged in this case (LSA-R.S. 40:966 A and LSA-R.S. 40:967 A) were both punishable necessarily by imprisonment at hard labor. The trial judge informed the defendant on the record that he was entitled to twelve peremptory challenges.