# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 12-525


**STATE OF LOUISIANA**

**VERSUS**

**MATTHEW THOMAS CONWAY**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 162,850
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**AFFIRMED; REMANDED WITH INSTRUCTIONS.**


**Charles A. Riddle, III**
**District Attorney**
**Post Office Box 1200**
**Marksville, Louisiana 71351**
**(318) 253-6587**
**Counsel for Appellee:**
       **State of Louisiana**

**Mark F. Kelly**
**Assistant District Attorney**
**Post Office Box 528**
**Marksville, Louisiana 71351**
**(318) 253-5815**
**Counsel for Appellee:**
       **State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, Louisiana  70602-1641**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
          **Matthew Thomas Conway**

**Matthew Thomas Conway**
**In Proper Person**
**Louisiana State Penitentiary**
**General Delivery**
**Angola, Louisiana  70712**
**Defendant**

**KEATY, Judge.**

Defendant, Matthew Thomas Conway, appeals his conviction of second degree murder. For the following reasons, we affirm.

## PROCEDURAL BACKGROUND

In early 2011, Defendant was a habitual drug user and unemployed when he concocted a plan to rob the victim, Derek Desselle. The plan included a fake drug deal as a ruse to lure the victim. Defendant and an associate, Thad Moses, met the victim in the early afternoon. All three men got into a truck and drove to a gravel road where Defendant shot the victim and took his wallet. When questioned by police, Defendant admitted to shooting the victim but claimed the victim had tried to get his gun and punch him.

On July 14, 2011, an Avoyelles Parish grand jury charged Defendant with second degree murder, a violation of La.R.S. 14:30.1. On November 17, 2011, a jury found Defendant guilty as charged. On January 5, 2012, the trial court sentenced Defendant to life imprisonment. Defendant now appeals.

## DISCUSSION

On appeal, Defendant alleges the trial court erred in failing to grant his challenge for cause regarding alternate juror Roland Dupuy. Defendant further contends the trial court erred in allowing gruesome crime scene photographs to be admitted at trial.

## ERRORS PATENT

At the sentencing, the trial court stated, "You'll have two years to apply for post conviction relief." Louisiana Code of Criminal Procedure Article 930.8 provides that the defendant has two years after the conviction and sentence become final to seek post-conviction relief. We find that the trial court's advisement regarding the time limitation for filing an application for post-conviction relief was

insufficient. As such, this matter will be remanded, and the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending written notice to him within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *See State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 03-1762 (La. 2/10/05), 924 So.2d 163.

## FIRST ASSIGNMENT OF ERROR

In his first assignment of error, Defendant argues that the trial court erred in failing to grant his challenge for cause against an alternate juror, Roland Dupuy[1] ("Mr. Dupuy"), who knew the victim's father. As Defendant points out in his brief, there is no indication that either party received additional peremptory challenges for selecting alternate jurors as required by La.Code Crim.P. art. 789.

The State points out that Mr. Dupuy did not participate in deliberations. The fifth circuit has stated:

> Defendant used his [lone peremptory challenge] to excuse prospective [alternate] juror Rosie Foret. Since Foret was ultimately stricken, and the alternate jurors chosen were dismissed at the start of deliberations, the trial court's ruling as to Foret had no effect on the verdict. Absent a showing of actual prejudice, defendant's claim fails.

*State v. Smith*, 05-951, p. 10 (La.App. 5 Cir. 6/28/06), 934 So.2d 269, 276, *writ denied*, 06-2930 (La. 9/28/07), 964 So.2d 357, *citing State v. Comeaux*, 93-2729 (La. 7/1/97), 699 So.2d 16, *cert. denied*, 522 U.S. 1150 (1998).

The record indicates that the alternates did not participate in deliberations. Defendant does not claim otherwise but argues that "Mr. Dupuy may have expressed his interpretation of the evidence before being discharged"; thus, any error could not be harmless. However, Defendant makes no showing of actual prejudice. Therefore, this first assignment of error lacks merit.

---

[1] "Dupuy" is the name shown in the transcript. The minutes show "Dupree."

## SECOND ASSIGNMENT OF ERROR

In his second assignment of error, Defendant argues the trial court erred by allowing gruesome photographs to be admitted into evidence. The trial court allowed the State to admit pictures of the victim's "burned and still smoking body," and Defendant argues those pictures were not necessary because they "were not needed to prove or to identify the victim." The record shows Defendant specifically objected to exhibits S-7 and S-39 and also raised a specific objection to four autopsy pictures, S-55 through S-58.

In *State v. Robinson*, 02-1869, p. 28 (La. 4/14/04), 874 So.2d 66, 85-86, *cert. denied*, 543 U.S. 1023 (2004), the supreme court stated:

> In his fourteenth assignment of error, defendant contends that the admission of photographs from the murder scene was more prejudicial than probative, and therefore violated his right to a fair trial. We disagree, and find that the trial court's decision to admit the crime scene photographs did not violate defendant's right to a fair trial because the photographs possessed probative value, and further, the contents were not so gruesome as to overwhelm the jury and cause them to convict based on insufficient evidence.
>
> This Court held in *State v. Letulier*, that even where the cause of death is not at issue, the State is entitled to the moral force of its evidence. *State v. Letulier*, 97-1360, (La.7/8/98), 750 So.2d 784, 795. Therefore, postmortem photographs of murder victims are admissible to prove *corpus delicti*, to corroborate other evidence establishing cause of death, location, placement of wounds, as well as to provide positive identification of the victim. *Id*. In *Letulier*, the defendant stabbed an elderly man to death, robbed him of his social security income, and dumped his body in a local levee. *Id*. at 787. The State introduced pictures of the victim during the testimony of his daughter for identification purposes, as well as during the testimony of Det. Scott Haydel, a detective with the St. Martin Sheriff's Office, to explain the condition of the body when it was found. *Id*. at 795. Photographic evidence will be admitted unless it is so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient evidence, or, as explained in La. C.E. art. 403, when the prejudicial effect of the photographs substantially outweighs their probative value. *Id*. *See also State v. Koon*, 96-1208, (La.5/20/97); 704 So.2d 756; *State v. Maxie*, 93-2158, (La.4/10/95); 653 So.2d 526; *State v. Martin*, 93-0285, (La.10/17/94); 645 So.2d 190.

On appeal, Defendant indicates exhibits S-7 and S-39 through S-55 are the ones at issue, but this court finds that some of the photographs covered by that enumeration are totally benign in the context of the current assignment. For example, exhibits S-44 through S-49 show details of the crime scene; some include bloodstains but do not show the corpse. Regarding gruesome photographs, we note that S-7 shows the victim's prone body, but it is somewhat obscured by foliage and smoke. Exhibits S-39 and S-40 are similar to S-7. Exhibit S-41 is more of a close-up; it shows the corpse from knees to head; the buttocks are exposed and char marks appear on the skin. However, it does not appear to reveal any underlying tissue or blood, and since the body is prone, the face cannot be seen. Exhibit S-42 is a close-up of the left side of the victim's bare torso and his left hand. There is no blood, and the body appears merely dirty. Next, exhibit S-43 is a fairly close view of the victim's face, which appears to be bloody. Candidly, this photograph is disturbing, but not so ghastly as would be likely to sway jurors from reasoned consideration of the offense.

Exhibit S-55 is a close-up of the decedent's face, but it has clear probative value, as it shows the entry wound. Further, it is not particularly horrific; the bullet hole is small and the victim's face appears to be merely dirty. The next exhibit, S-56, shows the exit wound in the victim's back, but it looks no worse than a bad cut. Again, the back of his head appears to be merely dirty. Exhibit S-57 is more gruesome; it is more of a close-up and some bloody tissue is retracted to show the location of the bullet. Nonetheless, all of these photographs were relevant, as they were used to illustrate the medical testimony regarding cause of death.

The supreme court in *Robinson*, 874 So.2d at 86, explained:

> In *State v. Perry*, this Court affirmed defendant's conviction of five counts of first degree murder where the defendant shot both of his parents and two cousins, as well as a small child. *State v. Perry*, 502

So.2d 543 (La.1986). In *Perry*, the defendant argued that the admission of the photographs was unnecessary as the pathologist who performed the autopsies testified as to the cause of death, the location and number of gunshot wounds, the type of weapons used, and the distance from which the weapon was fired. *Perry*, 502 So.2d 543, 558. The victims in *Perry* were all shot at close range with a shot-gun and the photographs were quite graphic, however, this Court found that the trial court did not err in allowing the admission of the photographs into evidence as the photographs of the murder scenes were relevant to corroborate the testimony of the State's witnesses as to the location of the bodies, the apparent sequence in which the murders occurred, gunshot wounds sustained by the victims; as well as to impress upon the individual juror the seriousness of their task. *Id.* at 559. Therefore, we found that the admission of "gruesome photographs is not reversible error unless it is clear that their probative value is substantially outweighed by their prejudicial effect." *Id.*

With regard to the case at bar, defendant filed pre-trial motions to exclude gruesome photographs at the guilt phase and penalty phase of trial and offered to stipulate as to the victims' cause of death. On March 22, 1999, the trial court held a hearing to consider the admissibility of the state's crime scene photos. At that hearing, the State disclosed 63 crime scene photos from which it had culled 13 photos which it sought to introduce during the guilt phase. Of those, the court ruled that 10 crime scene photos would be admissible, but the other three were excluded.

There is no dispute that the scene in the small living room at 10 Guy Peart Road on May 28, 1996 was disturbing. Four family members had been shot in the head and left lying on the floor in pools of their own blood. The sight of a 10-month old baby in that setting made the scene even more shocking, however, the photographs were nevertheless relevant. The State was entitled to demonstrate that the victims clearly posed no threat to their killer, and that the head wounds suggested an execution-style killing from which none of the victims were given the opportunity to defend themselves or escape. Moreover, the 10 photographs that the trial court approved were not so graphic as to result in undue prejudice to the defendant. Nothing in the crime scene photographs admitted is so gruesome as to have overwhelmed the reason of the jury and lead them to convict without sufficient other evidence. Defendant's assignment of error as to admissibility of the photographs of the crime scene is therefore without merit.

Viewing the photographs at issue in light of *Robinson*, we conclude that

Defendant's second assignment of error lacks merit.

## DECREE

Defendant's conviction is affirmed. This matter is remanded, and the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received notice.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**